# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

EDGARDO TORRES RODRIGUEZ,

    Plaintiff,

v.	Case No:   6:23-cv-1110-RBD-LHP

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

Edgardo Torres Rodriguez ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability and Supplemental Security Income benefits. Doc. No. 1. Claimant makes one argument challenging the Commissioner's final decision, and based on that argument, requests that the matter be remanded for further administrative proceedings. Doc. No. 29. The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence, was decided according to proper legal standards, and should be affirmed. Doc. No. 32.

For the reasons discussed herein, it is **RESPECTFULLY RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

I.     PROCEDURAL HISTORY.

On June 11, 2012, Claimant filed an application for Supplemental Security Income, alleging a disability onset date of July 1, 2010.  R. 20, 40, 58–65.  His claim was denied initially and on reconsideration, and Claimant requested a hearing before an ALJ.  R. 66, 67, 169.  A hearing was held before the ALJ on January 27, 2015, at which Claimant appeared with an attorney.  R. 199–231.  Claimant and a vocational expert ("VE") testified at the hearing.  *Id.*

Following the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.  R. 74–86.  Claimant sought review of the ALJ's decision by the Appeals Council.  R. 195–98.  On March 3, 2016, the Appeals Council denied the request for review.  R. 87–90.  After seeking review in federal district court, United States Magistrate Judge Mark A. Pizzo affirmed the ALJ's decision.  R. 139–44.  Claimant appealed, and on June 20, 2018, the Eleventh Circuit Court of Appeals reversed and remanded the district court's decision and ordered on remand that "the ALJ must explicitly consider whether [Claimant] was disabled for any continuous 12 month period since the onset of his eye injury prior to his surgery on November 30, 2012."  R. 128–35; *see also Rodriguez v. Comm'r of Soc. Sec.*, 737 F. App'x 514, 517 (11th Cir. 2018).  Magistrate Judge Pizzo thereafter

ordered Claimant's case remanded to the ALJ "for further proceedings consistent with the Eleventh Circuit's opinion." R. 125.

A second hearing was held before a different ALJ on July 13, 2021, at which Claimant appeared with an attorney. R. 33–57. Claimant and a VE testified at the hearing. *Id.* Following the hearing, the ALJ issued another unfavorable decision finding that Claimant was not disabled.[1] R. 15–32. Claimant again sought review of the ALJ's decision by the Appeals Council. R. 325–27. On April 12, 2023, the Appeals Council declined to assume jurisdiction. R. 1–8.[2]

Claimant now seeks review of the final decision of the Commissioner by this Court. Doc. No. 1.

## II. THE ALJ'S DECISION.[3]

---

[1] While Claimant's appeal of his initial application for disability benefits was pending before the Eleventh Circuit, Claimant filed a second application for disability benefits on May 90, 2016. R. 91–102. On remand and direction from the Appeals Council, the ALJ consolidated the two applications into a single appeal. R. 15 n. 1, 145–56.

[2] *See also* 20 C.F.R. § 416.1484(a) ("[W]hen a case is remanded by a Federal court for further consideration and the Appeals Council remands the case to an administrative law judge, or an administrative appeals judge issues a decision pursuant to § 416.1483(c), the decision of the administrative law judge or administrative appeals judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case.").

[3] Upon a review of the record, the undersigned finds that counsel for the parties have adequately stated the pertinent facts of record. Doc. Nos. 29, 32. Accordingly, the undersigned adopts those facts by reference and only restates them herein as relevant to considering the issue raised by Claimant.

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 416.920(a).  R. 15–27.[4]  The ALJ first determined that Claimant had not engaged in substantial gainful activity since July 1, 2010, the alleged disability onset date.  R. 18.  The ALJ next found that Claimant suffered from the severe impairments of limited left eye visual acuity, bilateral shoulder arthrosis, depression, anxiety, and bipolar disorder.  *Id.*  However, the ALJ determined that Claimant's dyslipidemia, sebaceous cysts, hypothyroidism, mild medial epicondylitis, right carpal tunnel syndrome, elevated hemoglobin A1c, possible high blood pressure, obesity, and periodic reports of pain were non-severe impairments.  R. 18–19.  The ALJ then concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 19–20.

---

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

Upon consideration of the entire record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except with the following non-exertional limitations:

> The claimant can occasionally reach overhead bilaterally. The claimant cannot perform tasks that require full binocular vision or depth perception. The claimant is limited to simple routine repetitive tasks of SVP 1 or 2 and GED reasoning level of 1 or 2 for 2-hour segments throughout an 8-hour workday. The claimant can adapt to simple gradual changes in a work environment and no fast paced work environments.

R. 20. The ALJ next determined that Claimant had no past relevant work. R. 25. However, considering Claimant's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations to include housekeeping cleaner, garment bagger, and floor waxer. R. 26–27. Accordingly, the ALJ concluded that Claimant had not been under a disability, as defined in the Social Security Act, at any time since the July 1, 2010 alleged disability onset date. R. 27.

## III.   STANDARD OF REVIEW.

The Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's

findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV. ANALYSIS.**

Claimant's brief is succinct at best, and raises one assignment of error: that the ALJ failed to consider the time Claimant would have been unavailable for work due to procedures to his eye and the time needed for recovery during a closed period of disability[5] between June 11, 2012 (when Claimant applied for disability

---

[5] The undersigned notes that though it appears Claimant did not raise the closed

benefits) and June 1, 2017 (when Claimant experienced a significant improvement in the condition of his left eye).  Doc. No. 29.[6]  Given the paucity of analysis, it is unclear from Claimant's brief whether he is challenging the ALJ's decision at step four – the determination of the RFC – or at step five – the determination of whether there are significant numbers of jobs in the national economy that the Claimant can perform given the claimant's RFC, age, education, and work experience.  The undersigned therefore analyzes Claimant's argument under the standards for both steps, but regardless of which analysis applies, the undersigned finds no reversible error.

   A.   *Applicable Standards*

An individual claiming Social Security disability benefits must prove that he or she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  A claimant is considered

---

period of disability issue before the ALJ, Claimant did raise the issue before the Appeals Council.  *See* R. 325–26 (Claimant arguing before the Appeals Council that the ALJ failed to consider a closed period of disability); R. 1 (the Appeals Council rejecting Claimant's argument, stating that "as the ALJ explained, the objective medical evidence related to this impairment shows that it improved with treatment and did not prevent you from performing full time work for at least 12 continuous months." (citing R. 21–22)).  As such, the assignment of error is properly before this Court on appeal.  *Cf. Matthews v. Comm'r of Soc. Sec.*, No. 8:22-cv-679-JSS, 2022 WL 17844054, at *3 (M.D. Fla. Dec. 22, 2022) ("The court finds persuasive the reasoning of decisions in this district holding that a claimant's failure to raise a closed period of disability either before the ALJ *or* the Appeals Council precludes a review of this issue on appeal.") (collecting cases) (emphasis supplied).

   [6] Pursuant to Rule 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), Claimant was permitted to file a reply brief, but he did not.

disabled if he is unable "to engage in any substantial gainful activity by reason of a medically determinable . . . impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1). "When an ALJ determines that a claimant is not disabled at any time during the period from his alleged onset date to the date of the hearing and this decision is supported by substantial evidence, then the ALJ has not erred in failing to consider a claimant's eligibility for a closed period of disability."  *Benitez v. Comm'r of Soc. Sec.*, No. 2:17-cv-283-FtM-MRM, 2018 WL 6680985, at *3 (M.D. Fla. Sept. 8, 2018) (citing *Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 772–73 (11th Cir. 2006)).

At the fourth step of the sequential evaluation process, the ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c, 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a(4))(i)–(v)).  The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).  "In short, an ALJ's decision must demonstrate through well-articulated factual findings that the ALJ has considered each of a claimant's alleged impairments, singly and in combination, and the ALJ must address the degree of limitations, if any, caused by the combined effect of those impairments."  *Vitalis v. Comm'r of Soc. Sec.*, No. 6:12-cv-831-Orl-31GJK, 2013 WL 3070869, at *2 (M.D. Fla.

June 17, 2013) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *Walker v. Bowen*, 826 F.2d 996, 1001–02 (11th Cir. 1987)); *see also Walker*, 826 F.2d at 1001–02 ("[I]t is the duty of the ALJ to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." (quotation marks, alterations, and citations omitted)). In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources. 20 C.F.R. § 416.945(a)(3).

At step five, the ALJ determines whether there are significant numbers of jobs in the national economy that the claimant can perform, given the claimant's RFC, age, education, and work experience. *See Phillips*, 357 F.3d at 1237–39; 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(1), (4)(i)–(v). At step five, the Social Security Administration bears the burden to show that a significant number of jobs exist in the national economy, which the claimant can perform. *Phillips*, 357 F.3d at 1239; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this step, "the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work." *Pumroy v. Colvin*, No. 8:14-cv-2209-T-AEP, 2015 WL 12857078, at *3 (M.D. Fla. Sept. 10, 2015). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony

of a vocational expert." *Chapman v. Comm'r of Soc. Sec.*, 498 F. App'x 952, 953 (11th Cir. 2012)[7] (citing *Phillips*, 357 F.3d at 1239–40).

B.   *Analysis*

In reaching her decision, the ALJ considered Claimant's medical records with respect to his eye surgeries as follows:

> Beginning with the claimant's vision, the claimant developed a corneal ulcer with scarring and cataract in his left eye. In July 2010, the claimant had 20/20 vision in the right eye and only light perception at one foot in the left eye (Exhibit 3F). The claimant continued to have 20/20 vision in his right eye with only hand movements in the left eye (Exhibit 2F and Exhibit 19F). On October 2, 2012, the claimant was evaluated at Duke Hospital and his vision was 20/20 (right eye) and "count fingers at 5 feet" (left eye) (Exhibit 19F). On October 11, 2012, the claimant attended a consultative examination with Wendell Danforth, M.D. (Exhibit 5F). The claimant complained of cloudy vision and irritation in his left eye (Exhibit 5F). The claimant's left eye vision was 20/400 for distance and 20/800 for near vision (Exhibit 5F). The claimant's right eye vision was 20/20 (Exhibit 5F). Dr. Danforth did not offer an opinion as to the claimant's level of functioning or visual limitations (Exhibit 5F).
>
> On November 30, 2012, Derek Delmonte, M.D. performed a combined penetrating keratoplasty and cataract repair at Duke Hospital (Exhibit 19F). In subsequent examinations, the claimant demonstrated some improvement but the claimant missed several visits due to transportation and there was a delay in removing his sutures (Exhibit 19F). On February 7, 2014, the claimant's corrected vision was 20/20 (right eye) and 20/200 (left eye) (Exhibit 15F). Jacob Koczman, M.D. offered to remove some of the claimant's sutures to improve his vision (Exhibit 15F). The claimant had three sutures removed in July 2014 and two more sutures were removed in August

---

[7] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36-2.

> 2014 (Exhibit 15F). On August 26, 2014, the claimant's vision with refraction was 20/20 (right eye), 20/25-2 (left eye) and 20/20 (both eyes) (Exhibit 15F).
>
> The claimant's left cornea did well, and Philip Shettle, D.O. removed loose sutures on May 18, 2015, December 2, 2015, and February 10, 2016 (Exhibit 21F). On February 10, 2016, the claimant's vision was 20/20 (right eye) and 20/150 (left eye) (Exhibit 21F). A few months later, on May 20, 2016, Dr. Shettle removed additional broken and exposed sutures (Exhibit 231F). The claimant's corrected vision was 20/20 (right eye) and 20/100 (left eye) (Exhibit 21F). A year later, in May 2017, the claimant complained of difficulty seeing out of his left eye and he was referred to Whitney Smith, M.D (Exhibit 25F and Exhibit 28F). Dr. Smith removed additional sutures and treated the claimant's left eye (Exhibit 25F). By June 1, 2017, the claimant's left cornea was significantly improved and his vision was 20/20 (right eye) and 20/60 (left eye) (Exhibit 25F). While the record does not document any additional treatment, the claimant's primary care provider indicated on July 12, 2017 that the claimant continued with prenisolone droplets daily (Exhibit 28F). The claimant's more recent treatment notes do not contain any vision complaints (Exhibit 32F and Exhibit 33F).
>
> As directed by the Court, I specifically considered whether the claimant was disabled for any continuous 12-month period since the onset of his eye injury (Exhibit 12A). The record reflects that the claimant's right eye vision has always been within normal limits. While the claimant's left eye vision was significantly limited prior to surgery, his left eye vision improved with surgery. However, at times since surgery, the claimant's left eye has become irritated and treatment has been necessary. Therefore, to address the claimant's left eye condition, I eliminated tasks that require full binocular vision or depth perception from the claimant's residual functional capacity. This limitation is sufficient to address the claimant's lack of left eye visual acuity prior to surgery and any possible periods of irritation since surgery.

R. 21–22.

The ALJ also noted that "the claimant's left eye condition significantly improved with surgery and his other conditions have been treated with routine, conservative treatment. The claimant has had infrequent office visits and the record reflects significant gaps in treatment. In fact, there has been very little treatment since 2018. Despite his limited treatment, the claimant has done well. The claimant ambulates independently, he has normal strength in his extremities, and his mental health is stable." R. 23.

And with respect to step 5, the ALJ relied on the VE's testimony, which the ALJ found to be reliable and consistent with the information contained in the Dictionary of Occupational Titles. R. 26. At the July 13, 2021 hearing, the ALJ asked the VE if a person "would likely miss approximately two days a month of work for any reason, would there be jobs?" R. 52. In response, it appears that the VE testified that in his experience in the private sector, absences of more than six days total per year would prohibit or prevent full-time work. R. 52–53.[8]

Claimant concedes that the ALJ's RFC "may have been supported by the substantial evidence as of the date of the hearing." Doc. No. 29, at 6. However, Claimant contends that the ALJ should have considered the length of time it would

---

[8] This portion of the transcript indicates that the hearing recording was inaudible, *see* R. 57, however, Claimant has interpreted the VE's testimony in this same manner, *see* Doc. No. 29, at 7, and the Commissioner does not dispute this interpretation, Doc. No. 32.

have taken Claimant to recover from his various eye procedures and/or when he experienced various eye symptoms, that this time would have necessarily required Claimant to be out of work, and that the ALJ should have reconciled these considerations with the testimony of the VE during the July 13, 2021 hearing regarding absenteeism.   Doc. No. 29, at 6–7.

As noted above, it is unclear whether Claimant's argument relates to either step 4 or step 5 of the sequential evaluation process.  But at either stage of the process, the result is the same.  Claimant's argument suffers from one fatal flaw: the complete absence of any evidence suggesting any periods of time off (either actually taken or prescribed) for recovery or convalescence.  None of the medical records Claimant recites in his brief — the same records considered by the ALJ — specify any time that Claimant was unable to work while he recovered from his various procedures.  *See* Doc. No. 29, at 4–5 (listing various procedures and medical records); R. 21–22 (ALJ's assessment of Claimant's medical records for these same procedures).   Claimant seems to concede this fact, but instead suggests that the ALJ should be reversed based on speculation that an extended period of recovery would have been necessary.  *See* Doc. No. 29, at 6 ("Although the length of time it took the claimant to recover from the surgery is not in the record, logic dictates that he did require some period of recovery.").

Not only is Claimant's argument devoid of any persuasive or binding legal authority in support,[9] but what Claimant is asking the Court to do is step into the shoes of the ALJ to reweigh the evidence, and to place an interpretation upon it that is not supported by any of the objective medical evidence. This the Court cannot do. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]' ….") (alterations in original).

Simply put, Claimant bears the "burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Claimant has not pointed to any such evidence. As such, the ALJ did not err in neglecting to consider any potential recovery period from Claimant's eye procedures in fashioning an RFC at step four. *See, e.g., Malak v. O'Malley*, No. 8:23-cv-667-SPF, 2024 WL 1231317, at *4

---

[9] Claimant cites no legal authority with respect to the RFC analysis at step four. The two decisions Claimant does include in his brief relate to step five, are distinguishable, and are addressed below.

(M.D. Fla. Mar. 22, 2024) (finding no error with the ALJ's RFC determination in part because "[t]he Court also cannot endorse Plaintiff's speculation about future absences based solely on her past medical appointments," and to the extent Plaintiff suggested she was basing her absenteeism argument on the nature of her treatments, that argument "is, in essence, that there is evidence in the record that could support a different RFC determination.  This is outside of the scope of this Court's review.") (citations omitted); *Rivero v. Comm'r of Soc. Sec.*, No. 2:16-cv-845-FtM-CM, 2018 WL 1466387, at *6 (M.D. Fla. Mar. 26, 2018) (finding that the claimant's "alleged need to be absent from work at least two and one half days per month is speculation" because that "argument was based on the analysis of her general medical history").[10]

---

[10] Under a liberal reading of Claimant's brief, it is also possible that he is arguing that the ALJ erred in fashioning an RFC by failing to consider the time off Claimant required to attend his various medical appointments and surgeries.  Doc. No. 29, at 6–7.  To the extent such an argument is raised, it fails both due to the lack of any legal authority in support, and because courts in this Circuit have rejected such arguments.  *See Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) ("whether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments."); *White v. Comm'r of Soc. Sec.*, No. 8:23-cv-34-DNF, 2024 WL 1048095, at *5 (M.D. Fla. Mar. 11, 2024) ("[I]f Plaintiff is arguing that the ALJ should have considered Plaintiff's doctor's visits and hospitalization in assessing the RFC, 'that inquiry is beyond the scope of our review since it would require reweighing the evidence of [the plaintiff's] capabilities for employment.'") (quoting *Cherkaoui*, 678 F. App'x at 904).

And because there is no reversible error with respect to the ALJ's RFC, and because Claimant's argument is the same under both steps four and five (assuming both arguments are being raised), the undersigned also finds no error at step five. Indeed, Claimant's argument relies on mere speculation. And to the extent that Claimant is arguing that the ALJ should have relied on the VE's testimony regarding absenteeism, Claimant's argument is unpersuasive. "ALJ's are not required to rely on . . . answers to hypotheticals that include assumed limitations that are not supported by the medical record." *See Everett v. Comm'r of Soc. Sec.*, No. 8:20-cv-1242-JSS, 2022 WL 10622365, at *4 (M.D. Fla. Jan. 20, 2022) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). And again, Claimant points to no medical evidence of record that the ALJ failed to consider, regarding periods of convalescence, absenteeism or otherwise. *See also Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005) (finding no error at step five where the plaintiff "failed to offer any evidence that he could not perform the unskilled jobs identified by the vocational expert based on his ability to sit or stand for any period of time. This failure prohibits Williams from establishing his burden of his inability to perform the identified jobs.").[11]

---

[11] Claimant cites two decisions from outside of the Eleventh Circuit, both of which are distinguishable and therefore unpersuasive. First, Claimant cites *Kangail v. Barnhart*, 454 F.3d 627 (7th Cir. 2006) for the general proposition that where a claimant "can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity." 454 F.3d at 629. The claimant in *Kangail*, however, had a documented history

In sum, whether Claimant disputes the ALJ's ruling at step four or five of the sequential evaluation process, Claimant fails to establish reversible error.

## V. RECOMMENDATION.

For the reasons discussed herein, it is **RESPECTFULLY RECOMMENDED** that the Court **AFFIRM** the final decision of the Commissioner. It is further **RECOMMENDED** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on this Report and Recommendation and, thereafter, to close the file.

## NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's

---

of being unable to maintain a job, including holding and losing 10 different jobs over a span of three years. *Id.*, at 629–30. No such evidence exists here. Moreover, the Seventh Circuit found that the ALJ inferred from the medical records facts that did not exist, and "played doctor." *Id.*, at 629. This seems to be the very thing that Claimant argues the ALJ should have done in this case — inferred facts that do not exist in the medical evidence of record.

The second decision Claimant references is even more readily distinguishable. In *Janezich v. Barnhart*, 453 F. Supp. 2d 1019 (N.D. Ill. 2006), claimant's treating physician expressly instructed the claimant to take separate convalescence periods of twelve weeks, six weeks, and four weeks totaling 22 weeks over a span of 18 months, in order to recover from multiple reconstructive surgeries following breast cancer treatment. *Janezich*, 453 F. Supp. 2d at 1024–25. The district court found the ALJ erred at step five in failing to consider such clear and unequivocal medical evidence, as well as testimony from two vocational experts "that no employer would hire Ms. Jazenich for the eighteen-month period at issue here, from October 21, 1999, through March 20, 2001, because of her excessive absences due to her repeat surgeries and convalescence periods." *Id.*, at 1029. But as noted throughout this report, no such evidence exists in the present case.

factual findings and legal conclusions. Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 1, 2024.

*Leslie Hoffman Price*
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy